AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Central District of California

LODGED
CLERK, U.S. DISTRICT COURT
6/21/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: ___MMC___ DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
June 21, 2024
CENTRAL DISTRICT OF CALIFORNIA
BY: ___CLD___ DEPUTY

United States of America

v.

JESUS SOTO-PARADA and DANIEL PAVON,

Defendant(s)

Case No. 2:24-mj-03729-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of June 13, 2024, in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1951(a) | Interference with Commerce by Robbery |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

Dillan B. Cazares, Task Force Officer
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: June 21, 2024

Judge's signature

City and state: Los Angeles, California

Hon. Alka Sagar, U.S. Magistrate Judge
*Printed name and title*

AUSA: Jena A. MacCabe (x5046)

**AFFIDAVIT**

I, Dillan B. Cazares, being duly sworn, declare and state as follows:

## I.   INTRODUCTION

1. I am a Detective with the Fullerton Police Department ("FPD") and have been employed by FPD since 2016. I am also a federally deputized Task Force Officer ("TFO") presently working with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). As a TFO with the ATF, I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 3051, and I am empowered by law to conduct investigations and make arrests for offenses against the United States.

2. I am assigned to the ATF Orange County Violent Crime Task Force ("OCVCTF"). The OCVCTF is comprised of federal and local law enforcement agencies, including, but not limited to, the ATF, Brea Police Department, Santa Ana Police Department, Orange County District Attorney's Office, and FPD. The OCVCTF is responsible for among other things, investigating violations of federal law involving criminal street gangs, possession of firearms by prohibited persons, possession of stolen firearms, possession of machineguns, the illegal distribution of firearms and narcotics, burglaries, and violent crimes to include robberies, carjackings, and homicides.

3. To successfully conduct these investigations, I have used a variety of investigative techniques and resources, including physical and electronic surveillance, cellular

1

telephone analysis, interviews, and the review of various databases and records.  I have interviewed suspects who have committed robberies and burglaries, among other crimes, and have become familiar with the methods and means by which they commit crime and attempt to avoid law enforcement detection.  I have also interviewed witnesses and victims of crimes and participated in in-field lineups and presentations of six-pack photo arrays for suspect identification purposes.

  4. In the course of my investigations, I routinely utilize cellular technology and records, including cell phone pings, cell site simulators, forensic imaging of seized digital devices, call detail records with and without cell site location information, tower logs, and account history information.  Just in the last two years, I have reviewed and analyzed several of call detail records during various investigations.  I regularly obtain and analyze these records and data in the course of my investigations to establish patterns and obtain evidence of the crimes in which I am investigating since almost every person utilizes a cellular telephone during this day and age, and these devices often contain and transmit a wealth of information about a person's activities and communications related to criminal activity.

  5. During my tenure as a police officer, as well as an ATF TFO, I have conducted and participated in numerous investigations of criminal activity, including, but not limited to, the possession of firearms by prohibited persons, possession of stolen firearms, burglaries, robberies, carjackings, and

homicides.  Since joining the OCVCTF in April of 2022, I have specialized in investigations of robberies, firearms violations, drug trafficking, burglaries, homicides, and gang activity.  I have participated in the execution of numerous search and arrest warrants related to these investigations.

## II. PURPOSE OF AFFIDAVIT

6.   This affidavit is made in support of a criminal complaint against and arrest warrants for JESUS SOTO-PARADA ("SOTO") and DANIEL PAVON ("PAVON") for a violation of 18 U.S.C. § 1951(a) (interference with commerce by robbery).

7.   The facts set forth in this affidavit are based upon my review of surveillance video, law enforcement body-worn camera videos, and police reports, as well as my training and experience.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and warrants and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## III. SUMMARY OF PROBABLE CAUSE

8.   As set forth below, law enforcement is investigating a robbery that occurred on June 13, 2024, at a 7-Eleven[1]

---

[1] Based on my experience and training on the OCVCTF working robbery investigations that involve 7-Eleven stores, I know that 7-Eleven is a multi-national convenience store chain headquartered in Irving, Texas.  The company operates stores throughout the United States, as well as in several other
*(footnote cont'd on next page)*

convenience store in Gardena, California.  As set forth below, the following evidence connects SOTO and PAVON to the robbery: (1) the money stolen during the robbery contained a tracking device, which led law enforcement to SOTO and PAVON who were fleeing from the robbery in a vehicle approximately 12 minutes after the robbery occurred; (2) the stolen money and tracking device were located in the vehicle occupied by SOTO and PAVON; (3) the replica firearm used in the robbery was recovered in the vehicle that SOTO and PAVON were traveling in when located by law enforcement shortly after the robbery; (4) the clothing worn by both SOTO and PAVON during the robbery was located in the vehicle occupied by SOTO and PAVON by law enforcement; (5) SOTO and PAVON were identified by the victim as the individuals who committed the robbery; and (6) SOTO and PAVON both admitted separately to law enforcement that they committed the robbery together.

## IV. STATEMENT OF PROBABLE CAUSE

### A. Robberies Under Investigation

9.   Beginning in January 2024, the OCVCTF began investigating a series of related armed robberies of convenience stores that initially occurred in Orange County, California.  As the investigation ensued, I, along with other investigators assigned to the OCVCTF, learned of other additional related robberies that continued to occur in Orange County and Los

---

countries globally, and purchases and sells goods from other states and countries.  As such, this corporation conducts interstate transactions and transportation of money and products.

4

Angeles County.  I am the lead OCVCTF investigator of these robberies.  In these robberies, two to three Hispanic males wearing surgical masks[2] would enter the store and approach the clerk.  One suspect would brandish a pistol at the clerk and then steal money from the clerk, while the other suspect(s) would serve as a lookout.  Occasionally, the suspects not brandishing the firearm would also assist in stealing money or liquor during the robbery.

    10.  The following robberies are believed to be related:

    a.  January 11, 2024, at approximately 11:03 P.M., Monroe Liquor, located at 8800 Knott Avenue, Buena Park, California;

    b.  January 11, 2024, at approximately 11:14 P.M., Deep's Liquor Junior Market, located at 6326 Lincoln Avenue, Cypress, California;

    c.  January 18, 2024, at approximately 11:06 P.M., Bob's Liquor, located at 1123 West Orangethorpe Avenue, Fullerton, California;

    d.  January 19, 2024, at approximately 12:42 A.M., Qwik Korner Liquor, located at 612 West Baker Street, Costa Mesa, California;

    e.  January 20, 2024, at approximately 10:09 P.M., Nickey's Liquor Market, located at 12011 Garden Grove Boulevard, Garden Grove, California;

---

[2] In the Garden Grove robbery, SOTO did not wear a mask and cased the store prior to the robbery.

   f. January 24, 2024, at approximately 1:45 A.M., Pomona Wine Cellar # 2, located at 1146 West Mission Boulevard, Pomona, California;

   g. January 26, 2024, at approximately 11:00 P.M., Easy Day Liquor, located at 1571 Indian Hill Boulevard, Pomona, California;

   h. February 13, 2024, at approximately 12:42 A.M., Papas Liquor, located at 3244 East Coast Highway, Newport Beach, California;

   i. February 13, 2024, at approximately 10:03 P.M., Liquor Chest, located at 5298 Kanan Road, Agoura Hills, California;

   j. June 1, 2024, at approximately 1:14 A.M., Power Liquor, located at 1888 Placentia Avenue, Costa Mesa, California; and

   k. June 13, 2024, at approximately 2:33 A.M., 7-Eleven, locate 16711 South Vermont Avenue, Gardena, California.

  **B.** **The Subject Robbery**

  11. On Thursday, June 13, 2024, at about 2:33 a.m., Gardena Police Department ("GPD") officers responded to a report of a robbery that had just occurred at the 7-Eleven located at 16711 South Vermont Avenue, Gardena, California.

  12. Upon arriving at the store, GPD officers learned from the store clerk that minutes earlier, two suspects, who were both wearing blue surgical face masks, entered the business. After briefly loitering around the business, one suspect walked to the west side of the counter, then walked behind the front

6

counter, and then walked towards the clerk. The other suspect stood in front of the front counter, drew what appeared to be a black pistol from his sweatshirt, and pointed it in the direction of the clerk. Both suspects demanded that the clerk open the cash register. The clerk complied out of fear for his life and believing that he was going to possibly be shot if he did not comply.

13. While one suspect stole money from a register, the second suspect ordered the clerk to open a second cash register. When the clerk complied, the second suspect jumped over the front counter and went behind the counter to look through the register. The first suspect put the money that he stole from the first cash register into his pocket.[3]

14. After the robbery, both suspects ran out of the business and were last seen running northbound through the parking lot.

15. The estimated loss was $250.

**C.   Arrest of SOTO and PAVON**

16. After the robbery, GPD officers were notified police dispatch that there was a tracking device in the stolen money, and GPD officers were provided updates by dispatchers on the location of the tracking device.[4] During the updates, GPD

---

[3] I have reviewed the store surveillance that captured this robbery, as well as reviewed the GPD reports documenting this robbery, which corroborate the details listed herein.

[4] Based on my experiences working on the OCVCTF, as well as my conversations with other investigators on the OCVCTF, I know that the tracking devices used by 7-Eleven are provided by a contracted security company that upon activation of the device
*(footnote cont'd on next page)*

officers were notified that the tracking device was in the area of Marine Avenue and Normandie Avenue in Gardena, California.

17.  While patrolling the area for the locations provided by dispatch for the tracking device, a patrol officer from GPD observed a 2002 green Ford Explorer, bearing California license plate 9GTR036 in the vicinity that was consistent with the tracking device.[5]  As the patrol officer followed the Ford Explorer, the officer noticed that the path of travel of the Ford Explorer was consistent with the updates that police were receiving for the tracking device that was contained in the stolen money.  The GPD patrol officer conducted a vehicle stop on the Ford Explorer in the area of Van Ness Avenue and Marine Avenue in Gardena.[6]  The Ford Explorer yielded north of the aforementioned intersection.

18.  The driver, SOTO, exited the vehicle and was taken into custody.  The front passenger, PAVON, also exited the vehicle and was taken into custody.

19.  During a search of PAVON's person, a GPD officer located various denominations of U.S. currency in PAVON's front left and front right sweatpants pockets.

---

will notify local law enforcement and provide law enforcement with real time location information to aid police in finding the device.

[5] Due to the time of night, there were very few vehicles on the roads.  Specifically, at the time the officer located the Ford Explorer, there were no other vehicles on the road in the area.

[6] This intersection is approximately 2.5 miles from the 7-Eleven store.

8

20. During a search of the vehicle, GPD officers located a box of blue medical face masks in the backseat, various denominations of money, and the tracking device underneath the front passenger's seat, a black replica semi-automatic handgun underneath the front passenger's seat, various one dollar bills on the driver's seat, two long-sleeved black hooded sweatshirts on the front passenger floorboard, and a blue medical face mask that was between the front passenger's seat and the center console. Approximately $216.20 was collectively recovered from PAVON and the suspect vehicle.

21. The 7-Eleven clerk was transported by GPD officers to the location where SOTO and PAVON were detained, and the clerk positively identified SOTO and PAVON as the individuals who committed the robbery. Further, the clerk positively identified the sweatshirts that were located in the vehicle as the sweatshirts that the suspects were wearing during the robbery.

**D.  Interviews of SOTO and PAVON**

22. After being <u>Mirandized</u>, SOTO admitted to committing the robbery and admitted that PAVON was the one armed with the replica firearm during the robbery. SOTO denied using the replica firearm and admitted to only stealing money from the cash register. SOTO admitted that, prior to the robbery, he (SOTO) was with PAVON searching for a convenient store to rob and that they ultimately settled on robbing the 7-Eleven.

23. After being <u>Mirandized</u>, PAVON separately admitted to the robbery and admitted to using a black replica pistol to rob the store clerk. PAVON admitted to jumping over the counter and

pointing the replica firearm at the clerk.  PAVON admitted that SOTO took money from one of the cash registers, and PAVON was unsuccessful in taking money from the second cash register.

### E. SOTO's Criminal History

24. In 2016 and again in 2022, SOTO was arrested by the United States Department of Homeland Security, Customs and Border Protection ("CBP") for immigration violations.

25. On March 7, 2024, the United States Border Patrol ("USBP") arrested SOTO in Los Angeles for immigration violations.  Following this most recent arrest, I was advised by the USBP that SOTO was ultimately deported to El Salvador on or about April 12, 2024.

### F. PAVON's Criminal History

26. On May 7, 2024, PAVON was arrested by the Los Angeles Police Department for possessing a concealed 9mm pistol in a vehicle.  During the arrest, after being Mirandized, PAVON admitted that he possessed the firearm for protection.

//

//

## V. CONCLUSION

27. For all the reasons described above, there is probable cause to believe that SOTO and PAVON have committed a violation of 18 U.S.C. § 1951(a) (interference with commerce by robbery).

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this  21st  day of June, 2024.

_____
HON. ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE